UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

J & J SPORTS PRODUCTIONS, INC.,

                        Plaintiff,                   **REPORT AND RECOMMENDATION**

        v.                                               19-CV-5110 (RPK)

EDUARDO J. DOMINGUEZ, individually and
D/B/A PULIS BAR; and PULIS BROTHERS II CORP.,
an unknown business entity D/B/A PULIS BAR,

                        Defendant.
---------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       Plaintiff J & J Sports Productions, Inc. ("J & J") brought this action against EDUARDO J. DOMINGUEZ, individually and doing business as PULIS BAR; and PULIS BROTHERS II CORP., an unknown business entity doing business as PULIS BAR, for violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 605 *et seq.*, and 47 U.S.C. § 553 *et seq. See* Compl. ¶ 1. Plaintiff now moves for a default judgment against Defendants and requests $5,400.00 in statutory damages, $16,200.00 in enhanced damages, pre- and post-judgment interest, attorney's fees, and costs. *See* Mot. Default J. at 3, ECF No. 17; Pl.'s Mem. of Law in Support of the Motion for Default Judgment ("Pl.'s Mem. of L.") at 8, ECF No. 17-1.

       For the reasons discussed below, I respectfully recommend that Plaintiff's motion for default judgment be granted in part and denied in part. I further recommend that this Court award Plaintiff statutory damages in the amount of $1,800.00 and enhanced damages in the amount of $1,800.00, for the total amount of $3,600.00 with post-judgment interest. With respect to costs and attorney's fees, I recommend that Plaintiff be granted leave to make a supplemental motion for costs and fees no later than thirty (30) days after the judgment becomes final.

## FACTUAL BACKGROUND

Unless otherwise stated, all statements in this section are based on Plaintiff's allegations in the Complaint, Motion for Default, and accompanying documents. Plaintiff is a California corporation that owns the rights to sublicense certain televised pay-per-view events. *See* Compl. ¶¶ 6, 19.[1] Plaintiff was granted the exclusive nationwide commercial distribution (closed-circuit) rights to "*Saul Alvarez v Liam Smith, WBO World Super Welterweight Championship Fight Program*," which was telecast nationwide on September 17, 2016 (hereinafter referred to as the "Program").[2] *Id.* ¶ 19. Plaintiff grants sub-licenses to commercial establishments, such as bars and restaurants, that wish to broadcast these events at their places of business. *See* Ex. A ("License Agreement") at 13-20, ECF No. 1; *see* Compl. ¶ 20. The transmission of the Program was encrypted and made available only to establishments that paid Plaintiff the requisite licensing fee to exhibit the Program. Compl. ¶¶ 22-25.

At the time of the Program's broadcast, Defendant Pulis Brothers II Corp. operated the commercial establishment doing business as Pulis Bar, located at 240 Kings Hwy., Brooklyn, NY 11223. *Id.* ¶ 8. Defendant Eduardo J. Dominguez ("Dominguez") was the sole owner and principal of Pulis Brothers II Corp., which owned and operated the commercial establishment doing business as Pulis Bar. *Id.* ¶¶ 9-11. Dominguez was also the sole individual listed on the New York State Liquor Authority License for Pulis Bar. *Id.* ¶¶ 10-11. At no time did Plaintiff license the Program to Dominguez or Pulis Bar. *Id.* ¶¶ 28, 31. Nonetheless, the Program was broadcast on three

---

[1] Because Defendants are in default under Federal Rule of Civil Procedure 55(a), the Court accepts all of the well-pleaded factual allegations in Plaintiff's complaint as true, except those relating to damages. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *accord J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173 (ENV) (JO), 2014 U.S. Dist. LEXIS 136024, at *5-6 (E.D.N.Y. Aug. 29, 2014), *adopted by* 2014 U.S. Dist. LEXIS 132980 (E.D.N.Y. Sep. 19, 2014).

[2] Plaintiff's right to distribute the Program includes all under-card bouts encompassed in the television broadcast of the event. Compl. ¶ 19.

television screens and one projector screen at Pulis Bar on September 17, 2016. *Id.* ¶¶ 30-33; *see* O'Doherty Aff. at 37, ECF No. 17-3. There were approximately five patrons at the Pulis Bar during the broadcasting of the Program. O'Doherty Aff. at 38. There was no cover charge for entering the Pulis Bar. *Id.* at 37.

Plaintiff brought this action against Defendants on September 9, 2019. *See* Compl. at 1. Defendants were properly served. *See* Affidavit of Service, ECF No. 8. Plaintiff requested a certificate of default on January 7, 2020 (*see* ECF No. 14), which was entered by the Clerk of Court on January 10, 2020. *See* ECF No. 16. Plaintiff filed this motion for default judgment on February 4, 2020. *See* Mot. Default J. at 1.

## DISCUSSION

### I. Legal Standards

#### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment. See *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. *Id.* (citing Fed. R. Civ. P. 55(a)). Once default has been entered against the non-responsive parties, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Once the plaintiff meets these requirements, the court must accept the factual allegations in the plaintiff's complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court must determine whether these facts establish the defendants' liability as a matter of law. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). The court, however, "need not credit the plaintiff's legal conclusions." *Priestley*, 647 F.3d at 504.

Unlike allegations pertaining to liability, allegations in the complaint relating to damages are not deemed admitted upon entry of a default; instead, the court considers whether the plaintiff "has met the burden of proving damages to the court with 'reasonable certainty.'" *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 U.S. Dist. LEXIS 162711, at *4 (E.D.N.Y. Nov. 23, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). A court need not conduct an evidentiary hearing to determine damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). The Court may find this basis established "upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods., Inc. v. Emily Bar Rest. Inc.,* No. 15-CV-6499 (RJD) (SMG), 2016 U.S. Dist. LEXIS 133905, at *6 (E.D.N.Y. Sept. 27, 2016), *adopted by* 2016 U.S. Dist. LEXIS 152074 (E.D.N.Y. Nov. 2, 2016) (internal citations omitted).

### B. The Federal Communications Act

Section 553 of the FCA provides that an unauthorized person shall not "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Section 605 of the FCA provides that a person shall not, without authorization, "intercept any radio communication and divulge or publish the…contents…of such intercepted communications to any person." 47 U.S.C. § 605(a). If a defendant is found liable under both Sections 553 and 605 of the FCA, the plaintiff's damages shall be limited to those awarded under Section 605. *See Int'l Cablevision Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993).

## II. Liability

### A. Defendant Pulis Bar

I find that Plaintiff makes a sufficient claim for relief against Defendant Pulis Bar under Section 605 of the FCA. J & J had an exclusive license to broadcast, distribute, and sublicense the Program. *See* Compl. ¶ 19, License Agreement ¶ 3. Pulis Bar could only legally broadcast the Program by entering into a licensing agreement with J & J. *See* Compl. ¶ 19. Pulis Bar never received authorization from J & J to broadcast the Program. *See* Compl. ¶ 31; Gagliardi Aff. at 2-3, ECF No. 17-2. Nonetheless, Pulis Bar exhibited the Program to patrons at its establishment on September 17, 2016. *See* Compl. ¶ 12-17; O'Doherty Aff. at 37, ECF No. 17-3.

Taking these allegations as true, I find that the Plaintiff has sufficiently stated a claim for relief under Section 605 of the FCA. *See, e.g.*, *J & J Sports Productions, Inc. v. Nest Rest. & Bar, Inc.*, No. 17-CV-4107 (NGG) (RER), 2018 U.S. Dist. LEXIS 133915, at *5 (E.D.N.Y. Aug. 7, 2018); *J & J Sports Productions, Inc. v. Monte Limar Sports Bar Inc.*, No. 15-CV-3771 (ILG), 2017 U.S. Dist. LEXIS 33227, at *4-5 (E.D.N.Y. Mar. 8, 2017). Accordingly, I respectfully recommend that Pulis Bar be found liable for unlawfully intercepting and broadcasting the Program in violation of Section 605 of the FCA.

### B. Eduardo J. Dominguez

Plaintiff also seeks to hold Dominguez liable under Section 605 in his capacity as the principal of Pulis Bar. *See* Compl. ¶¶ 9-17. Where a plaintiff establishes that an entity violated Section 605, individuals connected to the entity may also be liable "under the theories of 'contributory infringement' or 'vicarious liability.'" *LX Food Grocery Inc.*, 2016 U.S. Dist. LEXIS 162711, at *5 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

A corporate officer is liable under a theory of contributory infringement if that officer authorizes the violations. *J & J Sports Prods. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019

5

U.S. Dist. LEXIS 80633, at *13 (E.D.N.Y. May 9, 2019) (citation omitted). Here, Plaintiff merely alleges, upon information and belief, that Defendant Dominguez "specifically directed the employees of Pulis Bar to unlawfully intercept, receive and broadcast Plaintiff's Program." Compl. ¶ 14. Such "formulaic recitation of the elements of a cause of action is insufficient to establish a prima facie case" against Dominguez under the contributory infringement theory. *See, e.g., J & J Sports Prods. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 U.S. Dist. LEXIS 126308, at *11 (E.D.N.Y. July 25, 2018) (holding that the bare allegation in the complaint asserting that the individual defendant "directed or permitted" the unlawful broadcasting and the fact that the individual is the principal listed on the restaurant's liquor license would be insufficient to establish contributory liability against the individual defendant); *J & J Sports Prods. v. Orellana*, No. 18 CV 2052, 2019 WL 1177719, at *4 (E.D.N.Y. Mar. 13, 2019) (declining to hold individual defendant liable where the plaintiff cited nothing more than defendant's "designation as the owner or principal of [establishment] on its New York State Liquor Authority-issued license"). Thus, this Court cannot conclude that contributory infringement applies to Dominguez.

Alternatively, Plaintiff seeks to hold Dominguez vicariously liable. Vicarious liability requires that a "corporate officer had (1) a 'right and ability to supervise' the company's activities and (2) 'an obvious and direct financial interest in the exploitation of copyrighted materials' by the corporate entity." *J & J Sports Prods. v. Ahuachapan Corp.*, No. 17-CV-1184 (LDH) (PK), 2019 U.S. Dist. LEXIS 46240, at *6 (E.D.N.Y. Mar. 20, 2019) (quoting *Softel*, 118 F.3d at 971). Relying on Dominguez's name being listed on Pulis Bar's New York State Liquor License (Compl. ¶¶ 10-11), Plaintiff alleges that Dominguez "had the right and ability to supervise the activities of Pulis Bar, which included the unlawful interception, receipt and publication of Plaintiff's Program. Compl. ¶ 12. Furthermore, Plaintiff alleges that Dominguez "had an obvious and direct financial

6

interest" in the unlawful interception, which "resulted in increased profits or financial benefit" for Defendants. Compl. ¶¶ 15-16. There is "disagreement [among courts in this district] as to whether a liquor license is enough to establish the first prong of the vicarious liability standard"—namely, the "right and ability to supervise the company's activities." *Gonzalez*, 2019 U.S. Dist. LEXIS 80633, at *16 (citation omitted). However, this Court need not reach a conclusion on the first prong, as Plaintiff's allegations ultimately fail on the second prong: an obvious and direct financial interest. *See, e.g. J & J Sports Prods v. Crazy Willy's Bar, Lounge & Rest., Inc.*, No. 17-CV-1192 (NGG) (RML), 2018 U.S. Dist. LEXIS 128041, at *9 (E.D.N.Y. Jul. 30, 2018) (determining that "the court need not decide whether this allegation sufficiently establishes [the first prong] because Plaintiff has failed to satisfy the second prong"). To establish an obvious and direct financial interest, courts look to "whether 'the plaintiff showed direct financial gain, such as a cover charge on the night of the event[,]…[or] strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast.'" *Ahuachapan Corp.*, 2019 U.S. Dist. LEXIS 46240, at *7 (quoting *LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *8).

Here, Plaintiff's investigator, Ryan O'Doherty, counted the number of patrons at Pulis Bar on three separate occasions during the night on which the Program was broadcast, finding five, five, and five patrons respectively, filling ten percent of Pulis Bar's capacity. (O'Doherty Aff. at 37-38, ECF No. 17-3). The Program was broadcast on three television screens and one projector screen. *Id.* O'Doherty did not pay a cover charge, *id.*, and Plaintiff does not allege "that Defendants imposed a cover charge or a premium surcharge on its goods" during the broadcast. *LC Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *9. Moreover, "Plaintiff does not specify whether those patrons made any purchases, how this number compares to the number of patrons at the

7

[establishment] on a typical night, or how many of these patrons were actually watching" the Program. *The Nest Rest. & Bar Inc.*, 2018 U.S. Dist. LEXIS 149579, at *9-10 (rejecting claim of indirect financial gain where Plaintiff only alleged 35 patrons present at the establishment).

Based on the foregoing evidence from the Complaint and Affidavits, this Court cannot conclude that Dominguez had an obvious and direct financial interest in the infringement. *Compare J & J Sports Prods. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 U.S. Dist. LEXIS 165126 (E.D.N.Y. Dec. 9, 2015) (financial interest found where establishment was at or over capacity with approximately 100 patrons and charged $20.00 cover), *with J & J Sports Prods. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 18-CV-2622 (NGG) (RML), 2018 U.S. Dist. LEXIS 203582, at *4, 10 (E.D.N.Y. Nov. 29, 2018) (finding no financial interest where establishment had maximum capacity of 75 but only 26 patrons in attendance and investigator reported no cover charge), *adopted by*, 2018 U.S. Dist. LEXIS 215757 (E.D.N.Y. Dec. 20, 2018) *and Brown*, 2019 U.S. Dist. LEXIS 5694 (E.D.N.Y. Jan. 10, 2019) (finding no financial interest where establishment had maximum capacity of 85 but only 50 patrons in attendance and investigator reported no cover charge). Accordingly, vicarious liability cannot be established, and this Court respectfully recommends that Plaintiff's motion for default judgment be denied with respect to individual liability for Dominguez.

### III.   Damages

To establish damages upon a default, the movant needs to prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *See Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). The Court may award damages without an evidentiary hearing as long as there is a basis for the damages awarded.

8

*Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted).

Although in its Complaint, Plaintiff asserts claims under both Sections 553 and 605 of the FCA (Compl. ¶ 1), Plaintiff appropriately requests damages only under Section 605 in its Motion for Default Judgment. *See* Mot. Default J. at 3. Also, while in the initial complaint, Plaintiff sought $110,000.00 in damages for the Section 605 claim and $60,000.00 in damages for the Section 553 claim (*see* Compl. at 10), in this motion Plaintiff has revised its request for damages and seeks $5,400.00 for statutory damages and $16,200.00 for enhanced damages, along with pre- and post-judgment interest. Mot. Default J. at 3; *see* Pl.'s Mem. of L. at 4-5. Plaintiff also requests that the Court grant thirty (30) days from the date judgment is entered to submit a motion for costs and attorneys' fees. *See* Mot. Default J. at 3.

To support Plaintiff's damages request, Plaintiff submits: (i) the affidavit of Joseph Gagliardi, President of J & J (Gagliardi Aff. at 1-6, ECF No. 17-2); (ii) the License Agreement granting Plaintiff exclusive nationwide closed-circuit rights to the Program (Closed Circuit Television License Agreement at 9-16, ECF No. 17-2); (iii) the rate schedule for businesses of various sizes to obtain a license to broadcast the Program (Rate Card at 18, ECF No. 17-2); and (iv) the affidavit of investigator Ryan O'Doherty who observed the unlicensed broadcast of the Program at Pulis Bar on September 17 2016 (O'Doherty Aff. at 37-38, ECF No. 17-3). This documentary evidence is sufficient for this Court to calculate damages without conducting a hearing. *See, e.g.*, *Emily Bar Rest. Inc.*, 2016 U.S. Dist. LEXIS 133905, at *5.

"Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages." *J & J Sports Prods., Inc. v. Dzako & Sons Corp.*, No. 13-CV-2739 (ARR) (CLP), 2014 U.S. Dist. LEXIS 63995, at *15 (E.D.N.Y. May 8, 2014); see 47 U.S.C. §

9

605(e)(3)(C)(i). A plaintiff who elects statutory damages may recover a per-violation award "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II); see also *Time Warner Cable of N.Y.C. v. Sanchez*, No. 02-CV-5855 (GBD) (FM), 2003 U.S. Dist. LEXIS 12954, at *9 (S.D.N.Y. July 8, 2003)) (assessment of the amount of statutory damages "rests within the sound discretion of the Court.").

Courts in this Circuit have generally determined Section 605 statutory damages based on the greater of two calculations: either the flat fee or per-person method.

> Under the "flat fee" method, the court calculates the amount that defendants would have paid in exchange for the right to show the Event legally—in this case, Plaintiff's licensing fee. Under the "per-person" method, damages are equal to the amount an individual consumer would have paid to view the Event pay-per-view, multiplied by the number of consumers who watched the illegally transmitted Event.

*LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711 at *10-11 (citation omitted). In this case, Plaintiff does not offer any evidence of a per-person licensing fee. As a result, the Court will apply the flat fee method to calculate the award. Plaintiff alleges that, under the flat fee method, Pulis Bar would have paid $1,800.00 for Plaintiff's commercial license to broadcast the Program. *See* Compl. ¶ 28; Gagliardi Aff. at 3, ECF 17-2 ("The commercial sublicense fee for this establishment was $1,800); Pl.'s Mem. of L. at 7, ECF No. 17-1 ("The commercial fee for an establishment the size of Pulis Bar to broadcast the Program lawfully was $1,800.00). Therefore, the Court recommends the Plaintiff be awarded $1,800 in statutory damages.

Plaintiff also requests an award of enhanced statutory damages. Mot. Default J. at 2-3; Pl.'s Mem. of L. at 5, 9-10. The FCA provides that if any violation of Section 605(a) ""was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness

10

is defined as 'disregard for the governing statute and an indifference for its requirements.'" *El Ojo Aqua Corp.*, 2014 U.S. Dist. LEXIS 136024 at *18 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27 (1985)).

Many courts in this Circuit have concluded that intercepting and broadcasting a televised event without permission constitutes willful conduct for purposes of commercial advantage. *See J & J Sports Prods. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 U.S. Dist. LEXIS 126308, at *19 (E.D.N.Y. July 25, 2018) (collecting cases); *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Noting the weight of authority in this Circuit and Plaintiff's assertion that its "programming is not and cannot be mistakenly, innocently or accidentally intercepted" (Gagliardi Aff. ¶ 9), the Court recommends finding that Pulis Bar's broadcast of the Program without a license is sufficient to establish that its breach was willful and undertaken for the purposes of commercial advantage.

Having established Pulis Bar's willfulness, the Court must weigh various factors to determine whether and in what amount to award enhanced damages, including "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *J & J Sports Prods. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 U.S. Dist. LEXIS 126308, at *19 (E.D.N.Y. July 25, 2018). In determining the amount of enhanced damages to be awarded, Courts in this District have taken varying approaches, ranging from applying a multiple of two or three times the amount of statutory damages, to applying an equal amount to statutory damages, or denying enhanced damages entirely. *J & J Sports Prods. v. Morocho*, 2019 U.S. Dist. LEXIS 32482, at *14 (citing *J*

11

*& J Sports Prods. v. Afrikan Poetry Theatre, Inc.*, No. 17-CV-2196, 2018 U.S. Dist. LEXIS 32954, at *16 (E.D.N.Y. Feb. 27, 2018) (collecting cases), *adopted by*, 2018 U.S. Dist. LEXIS 60804 (E.D.N.Y. Apr. 10, 2018)).

Here, none of the aggravating circumstances in the aforementioned five-factor test are present. Plaintiff complains only of one violation by Pulis Bar and has submitted no evidence as to the amount of Pulis Bar's monetary gains, Pulis Bar's advertisement of the Program, a cover charge, or a premium placed on food or drinks. The only actual damages suffered by Plaintiff—namely, Defendants' failure to pay the $1,800.00 licensing fee—has already been accounted for in the Court's recommended statutory damages award. *See J & J Sports Prod. v. Leon*, No. 18-CV-2103 (PKC) (RML), 2019 U.S. Dist. LEXIS 48202, at *17 (E.D.N.Y. Mar. 22, 2019) (citation omitted).

Nevertheless, even in cases where none of the five factors militate in favor of awarding enhanced damages, courts in this Circuit have awarded "enhanced damages as a deterrent to the problem of persistent signal piracy and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill." *See J & J Sports Prods. v. GPN Bar Inc.*, No. 15-CV-6504 (FB) (ST), 2016 U.S. Dist. LEXIS 174514, at *15 (E.D.N.Y. Dec 15, 2016) (awarding enhanced damages equal to statutory damages to deter future violations) (citation and internal quotation marks omitted); *J & J Sports Prods. v. LDF Williams, LLC*, 2011 U.S. Dist. LEXIS 128558, at *5 (E.D.N.Y. Nov. 7, 2011) (same). The Court finds that merely awarding Plaintiff the cost of the fee to broadcast the Program as statutory damages would insufficiently deter future signal piracy and insufficiently compensate Plaintiff for these intangible losses. The Court therefore recommends an award of enhanced damages of $1,800.00, which is equal to the award of statutory damages recommended by the Court, for a total award of $3,600.00.

Plaintiff also seeks recovery of pre- and post-judgment interest at the federal statutory rate, requesting permission to move for the specific amount of such interest within thirty days of entry of the judgment. Mot. Default. J. at 3. The FCA does not provide for awards of pre- or post-judgment interest, but the Court may award such when, in the Court's discretion, it is "'fair, equitable, and necessary to compensate the wronged party fully.'" *See LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711 at *14 (quoting *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 955 F.2d 831, 835 (2d Cir. 1992)). However, courts "should not award prejudgment interest where 'the statutory obligation on which interest is sought is punitive in nature.'" *Id.* (quoting *Wickham Contracting*, 955 F. 2d at 834). Because statutory damages under the FCA are often construed as being "analogous to punitive damages," courts typically decline to award pre-judgment interest pursuant to these violations. *Id.* (quoting *J & J Sports Prods. v. La Ruleta*, No. 11-CV-4422 (NGG) (VVP), 2012 U.S. Dist. LEXIS 123118, at *13 (E.D.N.Y. Aug. 7, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 123111 (E.D.N.Y. Aug. 27, 2012)).

However, no such legal barrier to awarding post-judgment interest exists. *See, e.g.*, *Morocho*, 2019 U.S. Dist. LEXIS 49687, at *17 (awarding post-judgment interest at the federal statutory rate); *J & J Sports Prods. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 U.S. Dist. LEXIS 48067, at *18 (E.D.N.Y. Mar. 22, 2019) (same); *J & J Sports Prod. v. Leon*, 2019 U.S. Dist. LEXIS 48202, at *19 (E.D.N.Y. Mar. 22, 2019). Therefore, this Court respectfully recommends denying Plaintiff's request for pre-judgment interest but granting its request for post-judgment interest.

Lastly, Plaintiff requests thirty (30) days from the date judgment is entered to submit a request for attorneys' fees and costs. Mot. Default J. at 3. The FCA stipulates that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Because a prevailing party is statutorily entitled

13

to recover these damages, this Court respectfully recommends that Plaintiff's application to submit a request for attorneys' fees and costs 30 days from the entry of judgment be granted. *See, e.g.*, *Inga*, 2019 U.S. Dist. LEXIS 48067, at *17 (granting plaintiff 30 days to submit separate motion with supporting documentation for costs and attorneys' fees); *Morocho*, 2019 U.S. Dist. LEXIS 32482, at *16 (E.D.N.Y. Feb. 27, 2019) (same); *J & J Sports Prods. v. Babar*, No. 17-CV-5331 (JMA) (AYS), 2019 U.S. Dist. LEXIS 73565, at *4 (E.D.N.Y. May 1, 2019) (same).

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that:

(a) Plaintiff's motion for default judgment against PULIS BROTHERS II CORP. be granted, but that Plaintiff's motion for default judgment against EDUARDO DOMINGUEZ be denied and the claims against him dismissed;

(b) Plaintiff be awarded $3,600.00, consisting of $1,800.00 in statutory damages and $1,800.00 in enhanced damages;

(c) Plaintiff be awarded post-judgment interest but denied pre-judgment interest; and

(d) Plaintiff be permitted to file a motion for costs and attorney's fees no more than thirty (30) days after the entry of judgment.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985). Plaintiff is directed to serve a copy of this Report and Recommendation upon all Defendants at their respective last known addresses via return receipt delivery and to file proof of service with the Court within five (5) days of the date of this Report and Recommendation.

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 16, 2020